# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY MCMAHON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-00583 SRC |
| | ) | |
| ROBERT BOSCH TOOL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Robert Bosch Tool Corporation and

Lowe's Home Centers, LLC's Daubert Motion to Bar Philip Buckley [58] and Defendants'

Motion for Summary Judgment [82]. The Court grants both motions and dismisses this matter.

## I.    BACKGROUND

On April 29, 2016, Plaintiff Jeffrey McMahon suffered injuries to his right hand when the

auxiliary handle of a RotoZip Model RZ20 hand-held spiral saw (the "RZ20" or the "saw") he

was using detached from the body of the saw, causing McMahon to drop the saw while the blade

was still in motion.  The RZ20 saw was manufactured by Defendant Robert Bosch Tool

Corporation ("Bosch") and sold by Defendant Lowe's Home Centers, LLC.  McMahon asserts

claims against both Defendants under theories of strict and negligent products liability for design

defect, negligent failure to warn, and negligent supply of a dangerous instrumentality.

At the time of the accident, McMahon had installed and was using a wood carving blade

with deep grooved teeth in the saw's "Zipmate" attachment, although the saw's user manual

expressly warns against using wood cutting toothed blades in the attachment.[1]  Immediately

---

[1]The saw's Zipmate attachment allows users to attach abrasive cutoff wheels.  The user manual's

before the accident McMahon was standing on a stepladder holding the saw in his left hand by the auxiliary handle and bracing himself with his right hand against the header of a door frame he was attempting to cut. Multiple pages of the user manual instruct users to always hold the saw with two hands.

The saw is designed to require two actions before the auxiliary handle can be detached. First, the user must slide a lock pin to either side and, while holding the lock pin, depress a separate handle release button. User Manual, Doc. 59-1, pg. 9. McMahon testified that the saw's auxiliary handle detached even though he did not press the handle release button, and then the saw "danced along" the door header and across his hand, cutting his fingers. After the accident, the part of the latching mechanism that holds the auxiliary handle to the saw was found to be damaged, as a portion of a plastic receptacle shelf was broken off (sometimes referred to hereinafter as the "chip"). McMahon testified he inspected the saw before the accident and did not observe any damage to the latching mechanism. McMahon testified he would not have used the saw if he had seen any damage to the latching mechanism because it would have been unsafe and the handle could come loose. As a result of the damage to the latching mechanism, the saw's auxiliary handle will detach from the saw when a user presses the handle release button without first sliding the lock pin.

McMahon retained Mr. Buckley, a mechanical engineer, as an expert witness to testify concerning defects in the RZ20's design. Mr. Buckley's expert report offers the following opinions: (1) the handle connections on the saw are defective and caused the release of the saw

---

section titled "Zipmate Abrasive Cut-Off Attachment Safety Rules" states in pertinent part, "**Do not use this attachment with 'Woodcarving' blade or standard wood cutting toothed blades**. These blades are not intended for this tool and can create loss of control during use." User Manual, Doc. 59-1, pg. 5 (emphasis in original).

that injured McMahon; (2) the handle connection design is defective and its failure is highly foreseeable because (a) the connection method on the movable latch invites wear and is susceptible to wear induced tolerances that reduce handle hold force, (b) wear and tear reduces the holding force available, and (c) the two-factor locking scheme is reduced to a one-factor locking scheme in some cases. Buckley Report, Doc. 59-6, pg. 6. Mr. Buckley also opined that the handle release button's placement on the saw is defective because it promotes user thumb placement on the button, and the saw should have had an interlock device to stop the motor once the auxiliary handle detached.

Defendants move to exclude Mr. Buckley's expert opinions pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and move for summary judgment, arguing among other things that McMahon cannot prove the saw was defective.

## II.     STANDARDS

### A.     Standards for McMahon's Claims

The parties applied Missouri law to McMahon's claims so the Court does so as well. To prevail on a strict liability products defect claim under Missouri law, McMahon "'must prove that the product was defective and dangerous when put to a reasonable use anticipated by the manufacturer and that the plaintiff sustained damage as a direct result of the defect.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 446 (8th Cir. 2008) (quoting *Peters v. General Motors Corp.*, 200 S.W.3d 1, 17 (Mo. Ct. App. 2006)). A design defect claim involves a product that is unreasonably dangerous because of the nature of its design, regardless of whether a warning about the product is given. *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 757 (Mo. 2011); *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 749, 92 (Mo. Ct. App. 2008). "The focus is

3

on the product and its condition when sold, not on the manufacturer's conduct." *Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 466 (Mo. 2017) (citing *Moore*, 332 S.W.3d at 764).

Claims of "negligent failure to warn—and by analogy negligent design defect—focus[] on what the manufacturer knew rather than on the product." *Johnson*, 523 S.W.3d at 466 (citing *Moore*, 332 S.W.3d at 764). "To prove a negligent design claim under Missouri law, a plaintiff must show that the defendant breached its duty of care in the design of a product and that this breach caused the injury." *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 463 (8th Cir. 2015) (citing *Stevens v. Durbin-Durco, Inc.*, 377 S.W.2d 343, 346-47 (Mo. 1964)); *see also Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. 1985) (elements of negligence claim under Missouri law).

For a negligent failure to warn claim, a plaintiff must prove that the defendant designed the product at issue, the product had a defect or hazard, the defendant failed to use ordinary care to adequately warn of the risk of harm from the alleged defect or hazard, and as a direct result of the defendant's failure to adequately warn the plaintiff sustained damage. *Johnson*, 523 S.W.3d at 465, 466; *Moore*, 332 S.W.3d at 764; *see* Missouri Approved Jury Instructions ("MAI") § 25.09 (7th ed.). The causation element involves two separate requirements. *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992). "First, the plaintiffs' injuries must be caused by the product from which the warning is missing." *Id.* "Second, plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident." *Id.*

To establish a claim for negligently supplying a dangerous instrumentality, the plaintiff must establish that the defendant supplied an instrumentality for use that had a defect or hazard and was therefore dangerous when put to a reasonably expected use, the instrumentality was put to a reasonably expected use, the defendant had no reason to believe that those for whose use the

instrumentality was supplied would realize its dangerous condition, the defendant knew or had information from which it, in the exercise of ordinary care, should have known of the dangerous condition, the defendant failed to adequately warn of the dangerous condition and was thereby negligent and, as a direct result of the negligence, the plaintiff sustained damage. *Bland v. IMCO Recycling, Inc.*, 67 S.W.3d 673, 682-83 (Mo. Ct. App. 2002); *see* MAI § 25.10(A) (7th ed.).

Whether proceeding under a theory of strict liability or negligence, a plaintiff must prove the defect in the product or the defendant's negligence in the design proximately caused the plaintiff's injuries. *Strong v. American Cyanamid Co.*, 261 S.W.3d 493, 506 (Mo. Ct. App. 2007), *overruled on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013); *Willard v. Bic Corp.*, 788 F. Supp. 1059, 1063 (W.D. Mo. 1991) (citing *Garrett v. Jos. Schlitz Brewing Co.*, 631 S.W.2d 652, 654 (Mo. Ct. App. 1982)). Without evidence of a defect, a plaintiff cannot establish that a defect proximately caused his injuries. In such circumstances, summary judgment for the defendant manufacturer is appropriate. *Pro Serv. Auto., L.L.C. v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006); *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1060-61 (8th Cir. 2005).

Missouri law does not require expert testimony in a products liability case unless the determination of a relevant factual issue involves information so complex or technical that no fact finder could resolve the issue without help. *Pro Serv. Auto.*, 469 F.3d at 1214; *Stone v. Missouri. Dep't of Health & Senior Servs.*, 350 S.W.3d 14, 21 (Mo. 2011). Here, McMahon alleges the RZ20 saw's defective design caused its auxiliary handle to detach even though he did not press the handle release button because of damage on the latching mechanism's receptacle shelf. Whether the subject saw was susceptible to such damage to an extent that rendered it unreasonably dangerous requires consideration of mechanical engineering and product design

topics outside the general knowledge of a lay jury, including the materials involved, the size of the components used, and the forces imparted on those components during use of the product, and during installation of the handle and foreseeable events such as dropping the tool. *See Pro Serv. Auto.*, 469 F.3d at 1214 (requiring expert testimony on causation for the plaintiff's strict products liability claim given the complexities involved in the operation of the equipment at issue); *Wood v. Robert Bosch Tool Corp.*, No. 4:13CV01888 TCM, 2015 WL 5638050, at *6 (E.D. Mo. Sept. 24, 2015) (requiring expert testimony on causation in case alleging defective design of consumer table saw).

In addition, "Missouri courts have . . . concluded that '[w]arnings and how people react to warnings are arguably subjects about which persons having no particular training are incapable of forming accurate opinions.'" *Bachtel v. TASER Int'l, Inc.*, 747 F.3d 965, 970 (8th Cir. 2014) (quoting *Cole v. Goodyear Tire & Rubber Co.*, 967 S.W.2d 176, 185 (Mo. Ct. App. 1998)); *see Bryant v. Laiko Int'l Co.*, No. 1:05CV00161 ERW, 2006 WL 2788520, at *10 (E.D. Mo. Sept. 26, 2006) (recognizing "Missouri courts have always allowed, and often required expert testimony" on the question of failure to warn).

McMahon offers Mr. Buckley's expert opinions to support his allegations that the RZ20 saw was defectively designed. For the following reasons, the Court excludes these opinions as unreliable. Mr. Buckley offers no opinions on the adequacy of the warnings in the saw's user manual. Because McMahon has no other evidence of causation, the Court grants Defendants summary judgment on McMahon's claims.

**B. Standard for Admission of Expert Testimony**

Federal law governs the admissibility of expert testimony in diversity cases in federal court. *Clark ex rel. Clark v. Heidrick*, 150 F.3d 912, 914 (8th Cir. 1998). Federal Rule of Evidence 702 controls the admission of expert opinion and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the United States Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical, or other specialized knowledge is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

Proposed expert testimony must meet three criteria to be admissible under Rule 702. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* (citation omitted). "Third, the proposed

evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact

accepts it as true, it provides the assistance the finder of fact requires." *Id.* (internal quotation

marks omitted). To meet the third criterion, the testimony must be "based on sufficient facts or

data" and be "the product of reliable principles and methods," and the expert must have "reliably

applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

"Federal Rule of Evidence 702 reflects an attempt to liberalize the rules governing the

admission of expert testimony." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007)

(citing *Lauzon*, 270 F.3d at 686).. The rule "favors admissibility if the testimony will assist the

trier of fact." *Clark*, 150 F.3d at 915. Doubt regarding "whether an expert's testimony will be

useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation

omitted).

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an

expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho

Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Daubert*, 509 U.S. at 597). "When

making the reliability and relevancy determinations, a district court may consider: (1) whether

the theory or technique can be or has been tested; (2) whether the theory or technique has been

subjected to peer review or publication; (3) whether the theory or technique has a known or

potential error rate and standards controlling the technique's operation; and (4) whether the

theory or technique is generally accepted in the scientific community." *Russell v. Whirlpool

Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94). "This evidentiary

inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert*

factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th

Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Id.*

As a general rule "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Nebraska Plastics, Inc. v. Holland Colors Am., Inc.*, 408 F.3d 410, 416 (8th Cir. 2005) (quoted case omitted). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Id.* (quoted case omitted). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." *Id.*

## III.    DISCUSSION

Defendants assert that Mr. Buckley's opinions are unreliable and inadmissible under Rule 702 and *Daubert* because he has not tested his opinions, he has not prepared any alternative designs, and he relies on insufficient facts and data for his opinions which do not fit the facts of the case. Defendants also assert that Mr. Buckley is unqualified to offer opinions critical of the materials from which the RZ20 is manufactured, but do not otherwise challenge his qualifications.[2] The Court agrees that Mr. Buckley's opinions do not satisfy the Rule 702 standards for admissibility.

### A.  Mr. Buckley's Opinions are Not Supported by Testing

Testing is not always required for an expert opinion to be admissible. "[A]n expert might draw a conclusion from a set of observations based on extensive and specialized experience."

---

[2]Mr. Buckley's curriculum vitae (Defs.' Ex. H, Doc. 58-8) shows he has Bachelor of Science and Master of Science degrees in Mechanical Engineering from the University of Missouri at Rolla, and over fifty years of work experience as a design engineer and consultant with various private companies and research institutes.

*Kumho Tire*, 526 U.S. at 156. When an expert does so, like Mr. Buckley, the relevant question is whether the conclusions the expert draws from his observations are reliable. *See id.* at 153-54.

Mr. Buckley was deposed twice in this case. At his first deposition, Mr. Buckley testified he conducted no testing other than to see if the subject tool could cut wood. Buckley Dep. 32:2-14, Jan. 8, 2019 (Doc. 59-7) ("Buckley 1/8/19 Dep."). At his second deposition, Mr. Buckley used the word "testing" to describe videotapes he took of himself attaching and detaching the subject saw's auxiliary handle before his first deposition. Buckley Dep. 160:14-18, 172:20-173:8, 175:16-24, 178:21-179:2, Apr. 22, 2019 (Doc. 59-3) ("Buckley 4/22/19 Dep."). During the testing Mr. Buckley held the subject saw with its broken receptacle shelf and videotaped himself causing the auxiliary handle to detach from the saw body by pressing the handle release button. Buckley 4/22/19 Dep. 230:11-232:6. Mr. Buckley measured the length of the rear receptacle shelf and latch and from these measurements created an illustration to demonstrate the difference in shelf length caused by chipping and wear. He also tested approximately twenty cycles of attaching and detaching the auxiliary handle to the subject saw. Defendants do not dispute that when an RZ20 saw has a broken receptacle shelf, its auxiliary handle can detach when someone presses the handle release button without first sliding the lock pin. Domeny Dep. 64:22-65:6.

Mr. Buckley has not conducted any testing to establish that the subject saw was in an unreasonably dangerous condition at the time of its manufacture and sale, as opposed to after the accident at issue. He did not examine any exemplar RZ20 saws. Buckley 1/8/19 Dep. 22:23-23:13. He has not done any testing to establish how the latch mechanism's receptacle shelf broke and conceded he would have to speculate as to what caused it to break. Buckley 4/22/19 Dep. 179:9-180:6. Mr. Buckley testified he conducted no testing to establish that the saw's

handle design caused the receptacle shelf to break.  *Id.* 182:2-8.  He also has not done any testing to determine if the receptacle shelf broke when the tool fell during the accident at issue.  *Id.* 211:4-10.

McMahon describes Mr. Buckley's videos as "forensic testing" but the demonstrations are not scientific and offer no support to establish that the subject saw was unreasonably dangerous at the time of its manufacture and sale, as required to recover on a strict liability claim.  *See Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 298 (8th Cir. 1996) (finding the expert "has shown no factual basis to support an opinion" when the expert had neither designed nor tested for safety or utility any of the proposed safety devices.).

As to the accident itself, Mr. Buckley did not conduct any testing on kickback,[3] recoil, or power tool binding to rule out other potential causes of the accident such as McMahon's use of a wood carving blade in the saw.  Buckley 4/22/19 Dep. 260:6-14.  Mr. Buckley was unable to opine whether a kickback event caused the subject tool to move from left to right as McMahon described during his deposition.  *Id.* 215:10-16; Pl. Dep. 91:9-11, 107:20-24 (Doc. 59-4.).  Instead, Mr. Buckley speculates that the auxiliary handle detached from the saw and the rotational force of the blade alone caused the saw to travel approximately one foot from left to right.  Buckley 4/22/19 Dep. 215:17-216:14.

Mr. Buckley has performed no meaningful testing to support his opinions in this case.  His videotaped "forensic testing" serves only to confirm the undisputed fact that the RZ20's auxiliary handle can detach from a saw with a broken latch receptacle shelf when someone

---

[3]Mr. Buckley acknowledged the phenomenon known as kickback, which can cause a tool with a spinning blade to rapidly and violently come back at the user.  Buckley 4/22/19 Dep. 212:13-17, 213:1-9.

presses the handle release button. The mere confirmation of an agreed-upon fact is not probative of whether the saw was unreasonably dangerous at the time of its manufacture and sale. *See Smith v. Cangieter*, 462 F.3d 920, 924 (8th Cir. 2006) (affirming exclusion of expert testimony in part because the expert did not link the agreed-upon fact that a loss of traction can occur with part-time four-wheel drive to the conclusion that the vehicle four-wheel drive system was unsafe). The fact that the saw's receptacle shelf broke does not by itself establish that the saw was defective, or give rise to a cause of action. *See Shaffer v. Amada America, Inc.*, 335 F. Supp. 2d 992, 998 (E.D. Mo. 2003) ("The fact that an accident happened, standing alone, does not establish a case of product defect.") (citing *Winters v. Sears, Roebuck, & Co.*, 554 S.W.2d 565, 571 (Mo. Ct. App. 1997)); *see also Fireman's Fund*, 394 F.3d at 1061 ("[T]he mere fact of injury during use of the product usually is insufficient proof to show existence of a defect at the time defendant relinquished control.") (quoted case omitted); *Lirette v. DePuy Mitek, L.L.C.*, No. 2:13-cv-2892, 2014 WL 5445777, at *5 (W.D. La. Oct. 16, 2014) ("Products can break for any number of reasons, including user negligence; every broken product does not automatically give rise to a cause of action[.]").

Further, because Mr. Buckley did not conduct any testing to demonstrate that his theories are accurate, there cannot be a known or even potential rate of error for his results. *See Peitzmeier*, 97 F.3d at 298. Mr. Buckley's theories have not been scrutinized by the scientific community, and he did not cite any peer-reviewed articles, studies, or other authorities to support his opinions. *See Daubert*, 509 U.S. at 593. In sum, Mr. Buckley's opinions in this case are "connected to existing data only by the *ipse dixit* of the expert" and, as a consequence, the Court concludes they are inadmissible because "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**B.  Mr. Buckley's Alternative Design Opinions are Unreliable**

Based on his report and deposition testimony, Mr. Buckley is prepared to testify that the saw and its auxiliary handle are unreasonably dangerous because their designs lack certain safety features and they should have been made from other materials.  Defendants argue this testimony is unreliable because Mr. Buckley offers only conceptualizations or ideas and does not offer any drawings, suggested alternative designs, computer models, or prototypes.

An expert is not required to manufacture a new device or prototype for his opinion to be admissible.  *Unrein*, 394 F.3d at 1012.  "The question is whether the expert's opinion is sufficiently grounded to be helpful to the jury."  *Id.*  The expert's opinion must contain some proof of its reliability and an "expert proposing safety modifications must demonstrate by some means that they would work to protect the machine operators but would not interfere with the machine's utility."  *Id.*  An expert may be able to satisfy this requirement by, for example, testing the proposed safety features, preparing drawings or designs featuring the proposed modifications, identifying similar machinery already using the proposed features, or citing studies regarding the effectiveness of such features.  *Id.* at 1011-12; *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999); *Dancy v. Hyster Co.*, 127 F.3d 649, 651 (8th Cir. 1997); *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995).

In *Unrein*, an industrial and mechanical engineering expert's report concluded an industrial sander was defective because it lacked a continuous safety trip cord and a brake to stop the conveyor belt quickly.  *Unrein*, 394 F.3d at 1010.  The district court excluded the expert's testimony as unreliable and the Eighth Circuit affirmed because the expert failed to adequately develop or test his theories.  The expert suggested a guard could be installed to serve as a physical barrier, which would require an adjustable opening and would need to be properly

located to meet safety guidelines, but "[o]ther than pointing out these features in his report, he did not develop the guard concept further." *Id.* at 1010. The expert did not prepare drawings showing how a safety cord would be integrated into the sander or offer photographs showing its use with similar machines,[4] and "provided even less information about how the brake would function." *Id.* at 1012.

In *Jaurequi*, the Eighth Circuit affirmed the exclusion of a mechanical engineering expert's opinion that a corn head was defective and unreasonably dangerous because it lacked an "awareness barrier" that would foster safety and would not interfere with the machine's operation.[5] 173 F.3d at 1080. The expert had not studied the feasibility of the idea, much less constructed or even drawn the suggested device; did not test its utility as a safety device or its compatibility with the corn head's proper function; was not aware of any studies indicating the effectiveness of awareness barriers; had never designed an awareness barrier of any kind; and was not aware of any other corn head manufacturer utilizing an awareness barrier. *Id.* at 1080, 1084. "In short, [the expert] has provided no basis for us to believe that his opinions are anything more than unabashed speculation." *Id.* at 1084.

In the *Dancy*, *Peitzmeier*, and *Pestel* cases, the plaintiffs' engineering experts proposed the addition of a guard or other safety device on the allegedly defective product, the district courts excluded the testimony as unreliable, and the Eighth Circuit affirmed. *See Dancy*, 127 F.3d at 651 (mechanical engineering expert opined a forklift should have a guard around the

---

[4]This was so even though the Eighth Circuit described a safety cord as a "commonly used device." *Unrein*, 394 F.3d at 1012.

[5]A corn head is a device consisting of several moving parts that attaches to the front of a combine and gathers the standing crop and conveys it into the combine for processing. *Jaurequi*, 173 F.3d at 1078.

operator's compartment but "had not tested this theory in any way, had not seen this type of device on a forklift or any other similar machine, and had not even designed the device he suggested would have prevented Plaintiff's injury."); *Peitzmeier*, 97 F.3d at 297 (engineering expert opined a tire-changing machine's design was defective in several respects but he "neither designed nor tested for safety or utility any of the proposed safety devices that he claims are missing" from the machine, and his "only demonstration of an alternative design is a series of rough sketches that have not been adapted into engineering drawings, much less prototypes."); *Pestel*, 64 F.3d at 384 (mechanical engineer designed and fabricated a prototype safety-bar guard for a stump cutter but realized the guard needed further refinements; the prototype guard was not relevant to show a guard could be made that would offer protection and not inhibit the use of the machine because the expert admitted he would not use the guard in its present state, had not tested his guard, and was not prepared "to show that such a guard was ready for the market—his design was not finished.").

Here, McMahon asserts that Mr. Buckley has developed several specific design alterations. Mr. Buckley testified that "improvements . . . could be made to the cam lock mechanism and especially to the design of the materials and dimensions of the latches and catches" Buckley 1/8/19 Dep. 79:8-12, and that he would change the cam lock design to "make sure that it locked to start with," and if the movement he observed between the saw body and the auxiliary handle was due to wear, "I would want to work on the design of the component[s] so they didn't wear, and if it's due to design and that much tolerance is built into it, I would say that is not a good design and needs to be corrected." *Id.* 79:13-24.

Mr. Buckley testified he believed there was a "mismatch" between the latching mechanism's 3/8" front latch and the 1/16" rear latch, "so I would certainly want to work in that

area." *Id.* 81:7-18. He testified he would have designed latches that faced in opposite directions to minimize the possibility one of the latches might involuntarily rock out of the catch. *Id.* 83:18-21, 84:8-14. He would also have lengthened the rear catching shelf because he thinks its current length "probably is too thin to start with." *Id.* 85:8-10.

Mr. Buckley's expert report proposes a screw-on detachable handle design to provide a "very significant safety factor regarding tool control in use" Buckley Report, Doc. 59-6 at 4, and a possible alternative design that would include a dead man's switch where the handle and power switch are interlocked to automatically cut power in the event of an involuntary handle detachment. *Id.* at 5. Mr. Buckley's report is also critical of the engineering plastic material used to fabricate the saw's latch/catch connection. *Id.* at 4. At his deposition, Mr. Buckley suggested the receptacle shelf be re-designed using PEEK, but he could not state whether any manufacturer of handheld power tools uses that material for any component.[6] Buckley 4/22/19 Dep. 198:1-15, 200:2-9.

The Court finds Mr. Buckley has not shown a factual basis to support an opinion that his proposed modifications are feasible or that they would not interfere with the saw's utility, much less that they would have prevented the subject accident. Mr. Buckley has failed to adequately develop his theories, which are essentially mere ideas or conceptualizations. In addition to not conducting any testing as discussed above, Mr. Buckley has not prepared any alternative designs in drawings, computer models, or prototypes. Nor does he point to other manufacturers whose existing products incorporate the safety features, design specifications, or materials he describes,

---

[6]PEEK is polyether ether ketone, Buckley 4/22/19 Dep. 198:13-14, an "organic thermoplastic polymer in the polyaryletherketone (PAEK) family, used in engineering applications" and introduced in the early 1980s, https://en.wikipedia.org/wiki/Polyether_ether_ketone (last visited November 5, 2019).

or to any studies or scientific literature supporting his theories. *Cf., e.g., Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829 (8th Cir. 2019) (civil engineer's testimony concerning alternative safer design for ladder was properly admitted in the absence of physical testing where he pointed to models of similar ladders from competitors using the proposed design).

Mr. Buckley has many years of experience as a mechanical engineer in a variety of settings. The record indicates he examined and measured the subject saw and he owns and has used circular saws. Buckley 4/22/19 Dep. 212:18-25. However, Mr. Buckley has never been employed or retained by a power tool company and has never contributed to or designed any hand-held power tool placed in commercial production for consumers. Buckley 4/22/19 Dep. 159:22-160:5; 160:10-13. In his career he has never done any testing on a hand-held power tool used by consumers other than the videotaped "testing" described above, *id.* 160:14-25, in particular any testing on power tool kickback, power tool recoil, or power tool binding in a work piece. *Id.* 212:13-17. Mr. Buckley does not know which ANSI standard applies to the subject saw and has never served on any ANSI committees.[7] *Id.* 161:1-12. He could not state whether McMahon was using the correct tool for his project. Buckley 1/8/19 Dep. 115:2-3. Mr. Buckley therefore does not have sufficient engineering expertise or experience in the field of hand-held consumer power tools to provide a sufficient foundation for his opinions in the absence of testing or other evidence such as drawings or designs, computer models, prototypes, or existing products that incorporate his theories.

---

[7]"The American National Standards Institute (ANSI) is a private, not-for-profit organization dedicated to supporting the U.S. voluntary standards and conformity assessment system[.]", https://www.ansi.org/about_ansi/overview/overview?menuid=1 (last visited November 5, 2019).

As for alternative warnings, Mr. Buckley agrees that the saw's user manual warns against using the type of blade that McMahon was using at the time of the accident, and he has prepared no alternative warnings.  Buckley 1/8/19 Dep. 121:14-25.

As a result, Mr. Buckley's opinions are speculative and so fundamentally unsupported they can offer no assistance to the jury and must be excluded.

### C.   Mr. Buckley's Opinions Do Not Fit the Facts of the Case

Defendants also move to exclude Mr. Buckley's testimony on the basis that it does not fit the facts of the case because he ignores facts in evidence and offers no justification to depart from the facts based on testing, calculation, or other analysis.  The Court agrees.

Mr. Buckley testified that after the accident he was able to get the subject saw's auxiliary handle to detach from the saw body by pressing the handle release button without pressing the lock pin, so he speculates McMahon must have pressed the handle release button during the accident.  Buckley 4/22/19 Dep. 230:22-231:7, 233:6-234:3.  McMahon, however, testified he never pressed the handle release button before the handle detached from the saw.  Pl. Dep. 95:13-22.  Mr. Buckley speculates that wear caused the "chip" or damage in the latch mechanism's receptacle shelf, but McMahon testified that no wear or damage was present when he inspected the tool before using it on the date of the accident.  Buckley 1/8/19 Dep. 43:9-23, 49:5-15, 50:3-5; Pl. Dep. 78:16-80:19.  Mr. Buckley could not rule out the accident as the cause of the damage to the receptacle shelf.  Buckley 1/8/19 Dep. 43:24-44:4.  Further, although he never tested the subject saw, Mr. Buckley suggested it should have been tested against a locked or partially locked pin even though McMahon testified he never forced the handle on his saw by trying to remove or apply the auxiliary handle without first pressing the lock pin and depressing

the release button.  Buckley 4/22/19 Dep. 186:2-23; 189:17-23; Pl. Dep. 77:4-23; *see also*

Domeny Dep. 5, 7 (Doc. 59-5) (explaining Bosch testing).

Mr. Buckley's proffered expert testimony is not competent proof because his theories are

based on his own speculation and conjecture concerning facts central to the case—did McMahon

press the saw's handle release button during the accident; was there any wear or damage to the

saw's receptacle shelf prior to the accident—and his speculation is directly contrary to

McMahon's testimony as to these facts.  McMahon argues the discrepancies are proper subjects

for cross examination, but the Court disagrees because Mr. Buckley has not offered any reliable

basis or justification to explain why he ignores McMahon's factual testimony in formulating his

opinions.  Mr. Buckley's opinions as to these facts are based on his own say-so, and on his post-

accident "testing" and observation of the subject saw, though he cannot rule out that the saw's

receptacle shelf was damaged during the accident.

Mr. Buckley's testimony is properly excluded because too great an analytical gap exists

between the evidence and the opinions proffered.  *See Joiner*, 522 U.S. at 146 (courts are not

required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert."); *see also J.B. Hunt Transport, Inc. v. General Motors Corp.*, 243 F.3d 441, 443-44 (8th

Cir. 2001) (accident reconstructionist's opinion as to three-impact theory of a vehicular accident

was properly excluded where it was based primarily on photographs of scratches in the involved

vehicles' paint and was contrary to uncontradicted eyewitness testimony that only two impacts

occurred).

In the absence of any record evidence that Mr. Buckley used reliable principles and

methods or applied them reliably to the facts of this case to form his opinions, his causation

opinion does not satisfy the Rule 702 standards for admissibility. *See Pro Serv. Auto.*, 469 F.3d at 1216.

### D.  Failure to Warn Claims

Failure to warn claims arising under theories of both strict liability and negligence require the plaintiff to show that the product for which there was no warning caused the alleged injuries. *Moore*, 332 S.W.3d at 761. "Where there is insufficient evidence to support a claim that the product is defective, there is no duty to warn of the alleged defect." *Cangieter*, 462 F.3d at 925. Because without expert testimony McMahon cannot prove that a defect in the RZ20 saw caused his injuries, his failure to warn claims fail.

### E.  Summary Judgment

Without the necessary expert testimony, McMahon has no evidence that a defect in the RZ20 saw was the proximate cause of his injuries. Defendants are therefore entitled to summary judgment on McMahon's claims of strict products liability, negligent design, failure to warn, and negligent supply of a dangerous instrumentality. *See Pro Serv. Auto*, 469 F.3d at 1216; *Fireman's Fund*, 394 F.3d at 1062. As a result, the Court does not reach defendant Lowe's additional argument that it is entitled to summary judgment on McMahon's strict liability claim against it based on Missouri's innocent seller statute, § 537.762, Mo. Rev. Stat. (2010).

## IV.    CONCLUSION

For these reasons, Defendants' *Daubert* motion to exclude the opinions and testimony of McMahon's expert witness Philip Buckley will be granted, Defendants' motion for summary judgment will be granted, and Defendants' motion to exclude medical care costs other than actual medical care costs will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that the Court **GRANTS** Defendants Robert Bosch Tool Corporation and Lowe's Home Centers, LLC's *Daubert* Motion to Bar Philip Buckley [58].

**IT IS FURTHER ORDERED** that the Court **GRANTS** Defendants Robert Bosch Tool Corporation and Lowe's Home Centers, LLC's Motion for Summary Judgment [82].

**IT IS FURTHER ORDERED** that the Court **DENIES, as moot**, Defendants Robert Bosch Tool Corporation and Lowe's Home Centers, LLC's Motion to Exclude Medical Care Costs Other than Actual Medical Care Costs [69].

A separate Judgment is entered herewith.

So Ordered this 5th day of November, 2019.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**